*E-Filed 07/09/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JASON RIVERA, an individual; and MIKALA RIVERA, an individual, | Case No. C 10-02439 RS |
| Plaintiffs, | **ORDER DENYING PRELIMINARY INJUNCTION** |
| v. | |
| BAC HOME LOANS SERVICING, L.P., et al., | |
| Defendants. | |

No. C 10-02439 RS

## I. INTRODUCTION

Plaintiffs Jason and Mikala Rivera filed their Complaint on June 2, 2010 alleging thirteen causes of action, including violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq* ("RESPA"), the Truth in Lending Act, 15 U.S.C. § 1601 *et seq* ("TILA") and its implementing regulations, 12 C.F.R. § 226 *et seq* ("Regulation Z"), and a number of state law claims. On June 4, 2010, plaintiffs filed an emergency motion for a temporary restraining order ("TRO") enjoining defendants ReconTrust Company, N.A. ("ReconsTrust") and BAC Home Loans Servicing, LP ("BAC") from conducting a trustee's sale of plaintiff's property at 153 Smith Street, Alamo, California, 94507 (the "Property"). Plaintiffs represented that the trustee's sale was scheduled to take place on June 9, 2010 at 11:00 a.m. This Court issued the TRO along with an order to show cause why a preliminary injunction should not be granted. That motion came on for hearing on June 17, 2010.

## II. BACKGROUND

The Riveras explain that, on August 18, 2006, they purchased the Property after negotiating a mortgage and home equity line of credit ("HELOC") with defendant Countrywide Bank, N.A. ("Countrywide Bank"), whose successor in interest is defendant Bank of America, N.A. ("BofA"). The mortgage and HELOC (together, the "Home Loans"), which were secured by a deed of trust ("Deed of Trust"), were brokered by Countrywide Home Loans, Inc. ("CHL"), which was subsequently assigned by Countrywide Bank to BofA. ReconTrust was the initial trustee on the Deed of Trust. The promissory note executed pursuant to the Home Loans, as well as the Deed of Trust, was serviced by defendants Aqura Loan Services, Merscorp, Inc., and BAC.

According to the complaint, during the application process, CHL misrepresented the Riveras' income and provided falsified income documentation to Countrywide Bank in order to secure a mortgage and HELOC for which the plaintiffs would not have otherwise qualified. The complaint also alleges that Countrywide Bank failed to provide a number of material disclosures regarding, among others, the applicable interest rate, closing costs, and right to cancel under the Home Loans.

No. C 10-00805 RS

2

The Riveras aver that, as a result of these misrepresentations and omissions, they agreed to accept loans that they could not afford, and eventually fell behind on their payments. Accordingly, ReconTrust recorded a notice of default on May 2, 2008, and, because plaintiffs were unable to cure the default, ReconTrust eventually recorded a notice of sale on August 3, 2008, with a sale date of June 9, 2010. On July 29, 2009, the Riveras advised Countrywide Bank, CHL and ReconTrust of their intention to rescind the Home Loans.

Based on these allegations, plaintiffs assert causes of action for violations of TILA, California's Rosenthal Fair Debt Collectors Practice Act (the "Rosenthal Act"), RESPA, the California Business and Professions Code section 17200 *et. seq.*, intentional misrepresentation, breach of fiduciary duty, breach of contract, breach of implied covenant of good faith and fair dealing, predatory lending, negligence, usury, accounting and quiet title. On June 7, 2010, the Court issued a TRO temporarily enjoining the June 9, 2010 sale of the Property and ordered the defendants to show cause why a preliminary injunction should not be granted. Defendants responded to that order to show cause on June 15, 2010.

### III. LEGAL STANDARD

Injunctive relief is an "extraordinary remedy" and may only be awarded in response to a firm demonstration that the plaintiff is entitled to such relief. *Winter v. Natural Res. Defense Council*, 129 S. Ct. 365, 376 (2008); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (*quoting Winter*, 129 S. Ct. at 374).

At oral argument, plaintiffs' counsel represented that the appropriate standard for a preliminary injunction is a "sliding scale," which balances the likelihood of success on the merits against the relative hardship to the parties. In other words, according to plaintiffs, a preliminary injunction is warranted even where there is no likelihood of success on the merits, provided that the moving party can establish irreparable harm. This is not a correct characterization of the law.

No. C 10-00805 RS

Indeed, the Supreme Court in *Winter* rejected just such a "sliding scale" approach to the preliminary injunction standard. In so doing, Court reversed the Ninth Circuit's adoption of a balancing approach where "the required showing of irreparable harm varies inversely with the probability of success," *LGS Architects, Inc. v. Concordia Homes*, 424 F.3d 1150, 1155 (9th Cir. 2005), and flatly rejected at least one half of the conceptual continuum, insisting instead that a plaintiff must *always* show a likelihood of irreparable harm. *Winter*, 129 S. Ct. at 374. Indeed, the Ninth Circuit has since acknowledged that *Winter* rejected its earlier preliminary injunction standard as "too lenient." *See American Trucking Association v. City of Los Angeles* 559 F.3d 1046, 1052 (9th Cir. 2009). In *American Trucking*, the Court went on to recite *Winter*'s standard and insisted that, "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Id.* Here, plaintiffs have failed to show a substantial likelihood of success on the merits as to any of the thirteen claims for relief.

## IV. DISCUSSION

A. <u>TILA</u>

Plaintiffs contend that they are entitled to rescind the Home Loans under TILA, which grants borrowers the right to rescind within three days after executing a consumer credit transaction. 15 U.S.C. § 1635(a). Section 1635(f) imposes a three year time limit for rescission where a creditor fails to disclose that right to rescind. 15 U.S.C § 1635(f); 12 C.F.R. § 226.23(a)(3). Here, plaintiffs purchased the property on August 18, 2006, but did not bring these TILA claims until June 2010, nearly four years later. Although TILA does recognize the principal of equitable tolling under certain circumstances, that principal will not save the Riveras' TILA claim as the Ninth Circuit has observed: "Congress placed a three year absolute limit on rescission actions, demonstrating its willingness to put a limit on the scope of some types of TILA actions." *King v. California*, 784 F.2d 910, 914 (9th Cir. 1986). "At least in the rescission context," the Circuit reasoned, "Congress did not intend to prolong the limitations period." *Id*. Additionally, whether or not a statute of limitations should be equitably tolled is a factual determination that "focuses on whether there was excusable delay by the plaintiff and may be applied if, *despite all due diligence,* a plaintiff is unable

No. C 10-00805 RS

4

to obtain vital information bearing on the existence of his claim." *Huseman v. Icicle Seafoods, Inc.,* 471 F.3d 1116, 1120 (9th Cir.2006) (quotations and citations omitted) (emphasis in original). Even if plaintiffs were legally entitled to equitable tolling of their claims, they have not alleged any facts in the Complaint that would warrant tolling the statute of limitations here.

Moreover, the right to rescind does not apply to residential mortgage transactions. 15 U.S.C. § 1635(e); 12 C.F.R. § 226.23(f). A "residential mortgage transaction" consists of "a transaction in which a mortgage, deed of trust… or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition… of such dwelling." 15 U.S.C. § 1602(w); 12 C.F.R. § 226.2(a)(24). Plaintiffs rely upon *Semar v. Platte Valley Fed. Sav. & Loan Assoc.* for the proposition that borrowers have three days to rescind consumer credit transactions where the borrower's principal dwelling is the security interest. 791 F.2d 699, 701 (9th Cir. 1986). That case is distinguishable from the facts here, though, because it involved homeowners who took out a long-term loan to pay off a one-year second trust deed loan on their house. *Id.* Here, there is no allegation that either the HELOC or the mortgage was a consumer credit transaction executed for any purpose other than for acquiring the Property. Indeed, both the Complaint and the Memorandum in Support of Ex Parte Application maintain that the Riveras executed the mortgage and HELOC at the same time precisely in order to purchase the Property. Compl. at ¶¶ 12, 16; Doc. No. 8 at 1. In other words, the mortgage and the HELOC, together constituting the Home Loans, are residential mortgage transactions exempt from the right to rescind, and plaintiffs' TILA claims therefore cannot halt foreclosure.

B. California Rosenthal Act

California's Rosenthal Fair Debt Collectors Practice Act prohibits "debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1(b). Under the statute, a "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). Denial of a restraining order is appropriate when a plaintiff fails to allege

that a defendant is a debt collector as defined under the statute. *See Ines v. Countrywide Home Loans, Inc.*, No. 08cvl267 WQH (NLS), 2008 WL 2795875, *2 (S.D. Cal. Jul 18, 2008); *Izenberg v. ETS Servs.*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) ("[t]he [Rosenthal Act] applies only to debt collectors"). Moreover, courts have regularly held that mortgage servicing companies and mortgage lenders are not debt collectors under the statute. *See Caballer v. Ocwen Loan Serv.*, 2009 WL 1528128, *1 (N.D. Cal. 2008) ("creditors, mortgagors and mortgage service companies are not 'debt collectors' and are exempt from liability"); *Ines*, 2008 WL 2795875, *3.

Here, although the Complaint states that "Plaintiffs allege that Defendants are debt collectors," none of the evidence submitted suggests that this is the case. Indeed, other than this single reference to the defendants as "debt collectors," elsewhere in the Complaint plaintiffs refer to Countrywide Bank as the "loan originator," CHL as the "loan broker," ReconTrust as the "trustee" and BAC as the servicer of the promissory notes and Deed of Trust. Compl. at ¶¶ 14, 34, 38. Moreover, nowhere in the Complaint or in plaintiffs' Memorandum in Support of Ex Parte Application is there an allegation that the defendants engaged in any debt collection activity other than the foreclosure of the Property, which is not a debt collector's act under California Civil Code section 1788.2(c). *See Izenberg*, 589 F. Supp. 2d at 1199 ("foreclosure does not constitute debt collection under the [Rosenthal Act]"). Because the defendants are not "debt collectors" under California law, plaintiffs' Rosenthal Act claim lacks a substantial likelihood of success. Accordingly, the Riveras' request for preliminary injunctive relief is simply not viable under their second claim for relief.

C. RESPA

Plaintiffs' third claim for relief alleges a violation of 12 U.S.C. sections 2605(e) and 2608. RESPA claims under sections 2608 and 2605 are subject to a one-year statute of limitations and a three-year statute of repose, respectively. 12 U.S.C. § 2614. Because more than three years passed between the execution of the loans and the filing date, and because plaintiffs have not alleged any

No. C 10-00805 RS

6

facts in the Complaint that would warrant tolling the statute of limitations, plaintiffs' claims for damages under RESPA are time barred.[1]  *See Huseman*, 471 F.3d at 1120.

Moreover, both 12 U.S.C. section 2506 and 2608 outline the remedies available to a private citizen.  Section 2605 provides that individuals damaged by a RESPA violation are entitled to receive actual damages, as well as any additional damages the court may allow "in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."  12 U.S.C. § 2605(f)(1)(A) & (B).  Section 2605 also allows prevailing plaintiffs to recover attorney's fees and costs.  12 U.S.C. §§ 2605(f)(3).  Similarly, section 2608 provides for damages "equal to three times all charges made for such title insurance."  12 U.S.C. § 2608(b).  None of these remedies, however, would permit a permanent injunction against foreclosure.

The standard for a preliminary injunction is functionally the same as for a permanent injunction; the only difference is that the plaintiff must show a likelihood of success, as opposed to actual success, on the merits.  It follows, therefore, that a party may not obtain *preliminary* injunctive relief where he or she could not obtain *permanent* injunctive relief.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *see also, Chung v. NBGI, Inc.*, No. 09-04878, 2010 WL 841297 at *3 (N.D. Cal. Mar. 10, 2010) ("the question before the Court is not whether plaintiff is likely to succeed in proving that defendants violated these statutes, but whether she is likely to succeed on her claim for injunctive relief as a remedy for any such violation").  In this instance, even if plaintiffs had included facts which suggest that their RESPA claims were timely (which they have not), the proper remedy would be drawn from statutory damages, fees and costs.  Plaintiffs, therefore, have failed to show substantial likelihood of a successful permanent injunction on the merits, so their RESPA claims cannot stop foreclosure.[2]

---

[1] The Complaint alleges that the defendants failed to provide a proper written explanation or response to plaintiffs' "Qualified Written Request."  Compl. at ¶ 62.  However, it makes no averments as to when that Qualified Written Request was sent, nor is a copy of the Qualified Written Request attached to the Complaint or included with any of the other filings.

[2] A similar issue arises as to the claims for relief for violation of the Rosenthal Act, California Business and Professions Code section 17200 *et. seq*, breach of fiduciary duty, breach of contract, breach of implied covenant of good faith and fair dealing, predatory lending, negligence, usury, accounting and quiet title, for which it is unclear whether a proper remedy would permit plaintiffs' to stop foreclosure.  Because other bases exist to deny a preliminary injunction premised on these claims for relief, however, the Court does not reach that issue.

No. C 10-00805 RS

### D. Misrepresentation

The Riveras' fourth claim for relief for fraud alleges that the defendants inflated plaintiffs' income on their loan application. Compl. at ¶ 69. Under California Code of Civil Procedure section 338(d), "[a]n action for relief on the ground of fraud or mistake" must be brought within three years after the party discovers the fraud. Cal. Civ. Proc. Code § 338. Additionally, a party alleging fraud has a duty to exercise diligence in discovering the fraud, such that the three years begins to run when that party "has the opportunity to obtain knowledge from sources open to his investigation." *Lee v. Escrow Consultants, Inc*., 210 Cal. App. 3d 915, 921 (1989).

Here, the Riveras signed the loan documents on August 18, 2006, but did not file suit until June 2, 2010, almost four years later. There were no averments made, or evidence presented in the filings or at the oral argument, suggesting that plaintiffs lacked access to the loan documents for those four years. Certainly, then, the plaintiffs had "the opportunity to obtain knowledge from sources open to [their] investigation." In other words, the Riveras' claim for fraud is time-barred, and is therefore not substantially likely to succeed on its merits.

### E. Breach of Fiduciary Duty and Negligence

The Riveras' fifth and tenth claims for relief for breach of fiduciary duty and negligence, respectively, are based on the proposition that the defendants "owed a fiduciary duty to the Plaintiffs' to act primarily for their benefit, to act with proper skill and diligence, and not to make a personal profit from the agency at the expense of their principal, the Plaintiffs." Compl. at ¶ 79. It is settled California law, however, that "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings and Loan Ass'n*, 231 Cal. App. 3d 1089, 1093, fn. 1 (1991); *see also*, *Oaks Management Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006) ("a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender"). Moreover, California courts have routinely found that, under a standard borrower/lender relationship, a lender has no duty to disclose to a borrower what the borrower may or may not be able to afford. *See Wagner v. Benson*, 101 Cal. App. 3d 27, 34-35 (1980).

Here, plaintiffs have made no averments, nor provided any evidence, to suggest that the relationship between the defendants and the Riveras is anything more than a routine relationship between a lender and borrower. The only agreements alleged in the Complaint are the Home Loans themselves; there are no averments that these agreements created anything more than an obligation by CHL to fund a loan, and an obligation by the Riveras to repay that loan. Therefore, by failing to establish a fiduciary duty owed by defendants, plaintiffs have not met their burden as to likelihood of success on the merits on a claim for relief based upon breach of a fiduciary duty or negligence.

F. <u>Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiffs' claims for relief allege breach of contract (sixth) and breach of the implied covenant of good faith and fair dealing (seventh). Compl. at ¶¶ 84-97. Under California law, the elements of breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1179 (2008) (citations omitted). Similarly, the implied covenant of good faith is generally grounded in contract, not in tort law. Section 205 of the Restatement of Contracts states that, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (2009). Indeed, the implied covenant of good faith is intended to ensure compliance with the agreed terms of a contract. *See April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 816 (1983) ("it is implied in law that a party to a contract will not do anything which would deprive the other party of the benefits of the contract").

The basis for plaintiffs' contract claims is that the defendants "promised to provide Plaintiffs with an affordable loan." Compl. at ¶ 85. Nothing in the Complaint, or in any of the evidence presented to the Court, however, suggests that such an agreement existed. Again, the only contracts in evidence are the Home Loan documents, which simply create a lender/borrower relationship but do not, at least as alleged in the Complaint, require the defendants to provide the Riveras with an affordable loan. *See, e.g., Nymark*, 231 Cal. App. 3d at 1093, fn. 1; *Wagner*, 101 Cal. App. 3d at 34-35; *Oaks Management Corp.*, 145 Cal. App. 4th at 466 (a lender has no duty to disclose to a

NO. C 10-00805 RS

9

borrower what the borrower may or may not be able to afford).  Absent any applicable contractual relationship, then, plaintiffs cannot meet their burden of establishing a substantial likelihood of success on the merits as to a breach of contract or breach of covenant of good faith claim.

G. Predatory Lending

The eighth claim for relief is for predatory lending in violation of California Financial Code section 4970 *et. seq*.  Section 4970 only applies, however, when the loan is a "covered loan" as defined in the statute.  *Wolski v. Fremont Investment & Loan*, 127 Cal. App. 4th 347, 351 (2005).  Whether or not a loan is covered depends on the size of the loan and "[t]he total points and fees payable by the consumer."  Cal. Fin. Code § 4970(b).  Because plaintiffs fail to make any averments as to the specific terms of the loan, they cannot establish that it is a covered loan.  Therefore, they fall short of establishing a likelihood of success on the merits as to this claim for relief.

H. UCL

The Riveras aver in their ninth claim for relief that defendants engaged in unfair or unlawful business practices in violation of California's Unfair Competition Law ("UCL").  Cal. Bus. & Prof. Code § 17200 (prohibiting "unlawful, unfair or fraudulent" business practices).  They argue broadly that the defendants' acts constitute unfair or unlawful business practices "within the meaning" of the Code but do not actually differentiate between the defendants or pin their allegations to a particular prong of the UCL's prohibition against "unfair, unlawful or fraudulent" business practices.

Under the "unlawful" prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838-39 (1994).  Where a plaintiff cannot state a claim under the "borrowed" law, however, he or she cannot state a UCL claim either.  *See, e.g.*, *Ingels v. Westwood One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Cal. Ct.

NO. C 10-00805 RS

1  App. 2005) ("[a] defendant cannot be liable under [section] 17200 for committing unlawful
2  business practices without having violated another law") (citation omitted).

3  Under a "fraud" theory, a plaintiff must show that "members of the public are likely
4  to be 'deceived'" by the defendant's practices. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312
5  (2009) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)). Where a plaintiff alleges that
6  the defendant failed to disclose material facts, he or she must first establish that the
7  defendant had a duty to disclose those facts. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152
8  Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not
9  support a claim under the fraudulent prong of the UCL.").

10  As to UCL's "unfair" prong, California courts traditionally have applied a balancing
11  test. Under this test, "the determination of whether a particular business practice is unfair
12  necessarily involves an examination of its impact on its alleged victim, balanced against the
13  reasons, justifications and motives of the alleged wrongdoer." *Motors, Inc. v. Times Mirror*
14  *Co.*, 102 Cal. App. 3d 735, 740 (1980); *see also People v. Casa Blanca Convalescent Homes*
15  *Inc.*, 159 Cal. App. 3d 509, 530 (1984) (stating that a practice in California is unfair "when it
16  offends an established public policy or when the practice is immoral, unethical, oppressive,
17  unscrupulous or substantially injurious to consumers."). In *Cel-Tech Communications, Inc.*
18  *v. Los Angeles Cellular Telephone Co.*, however, the California Supreme Court rejected that
19  test and instead held that in a claim brought by a competitor, "any finding of unfairness . . .
20  [must] be tethered to some legislatively declared policy." 20 Cal. 4th 163, 185 (1999). The
21  Ninth Circuit has observed that these two options—to apply *Cel-Tech* directly to consumer
22  cases and require that the unfairness be tied to a "legislatively declared" policy as in *Scripps*
23  *Clinic*, or to adhere to the former balancing test as stated in cases such as *Motors, Inc.*—are
24  not mutually exclusive. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir.
25  2007).

26  Here, plaintiffs fail to establish a claim for relief under any of the UCL prongs; they
27  fail to show a substantial likelihood of success as to any of the other causes of action and

No. C 10-00805 RS

make no averments of a deceptive or unfair business practice. Therefore, they fail to advance any factual support for their conclusory claim that they suffered as a result of "Defendants' wrongful conduct" and thereby fall short of a showing of any prospect of success on the merits.

I. Usury

Plaintiffs' eleventh claim for relief avers that the interest rate on the loan was usurious. Compl. at ¶ 114. In California, a claim for usury requires "(1) [t]he transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994) (citations omitted). Here, the Complaint makes no averments as to the willful intent of the defendants to enter into a usurious transaction, nor does it suggest that the loan and interest were "absolutely repayable" by the Riveras. Therefore, the claim for usury also fails as a basis for preliminary injective relief.

J. Accounting

The twelfth claim for relief seeks an accounting from the defendants. Notwithstanding the fact that accounting is more appropriately characterized as a form of relief rather than as an independent claim, *Borrego v. BMG U.S. Latin*, 92 Fed. App'x 572, 573 (9th Cir. 2004) (citing *Hillman v. Stults,* 263 Cal. App. 2d 848, 876 (1968)), plaintiffs fail to show the need for such an accounting.

To assert a right to accounting, plaintiffs must demonstrate either "(1)… the relationship of the parties created an equitable duty to account…; (2)… the complicated nature of accounts would make it difficult, if not impossible, for a jury to unravel the numerous transactions; [or] (3)… an accounting on an otherwise legal claim [is] incidental to a demand for an injunction or other equitable relief." *Towers v. Titus*, 5 B.R. 786, 793 (N.D.Cal.1979) (citing 9 Wright & Miller § 2310). Moreover, they must prove that "some balance is due the plaintiff[s] that can only be ascertained by an accounting." *Teselle v.*

No. C 10-00805 RS

12

*McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). Here, nothing in the Complaint suggests that defendants owe the Riveras any amount of money - indeed, it appears just the opposite - or that the nature of the transaction or the relationship of the parties necessitates an accounting. Therefore, plaintiffs fail to establish a substantial likelihood of success on their claim for an accounting.

K. Quite Title

The Complaint's last claim for relief is for "quiet title" to the Property. Defendants make a number of arguments against "quiet title," but it is dispositive as to this claim that, under California law, a borrower may not assert "quiet title" against a mortgagee without first paying the outstanding debt on the property. *See Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted). Therefore, because the Riveras have not paid their outstanding debt on the Property, their claim for "quiet title" fails as a basis for preliminary injuctive relief.

## V. CONCLUSION

A preliminary injunction is an "extraordinary" remedy that is not lightly granted. A moving party must demonstrate some likelihood of success on the merits. Plaintiffs have failed to do so here, and their motion for preliminary injunctive relief therefore must be denied.

IT IS SO ORDERED.

Dated: 07/09/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 10-00805 RS