*E-Filed 11/22/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JASON RIVERA, an individual; and
MIKALA RIVERA, an individual,

        Plaintiffs,

v.

BAC HOME LOANS SERVICING, L.P., et al.,

        Defendants.

_____/

Case No. C 10-02439 RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs Jason and Mikala Rivera filed their original complaint on June 2, 2010, alleging thirteen claims for relief, and on June 4, 2010 filed an emergency motion for a temporary restraining order ("TRO") enjoining defendants ReconTrust Company, N.A. ("ReconTrust") and BAC Home Loans Servicing, LP ("BAC") from conducting a trustee's sale of plaintiff's property located at 153 Smith Street, Alamo, California, 94507 (the "Property"). This Court issued the TRO along with an order to show cause why a preliminary injunction should not be granted. After a hearing, the Court denied plaintiffs' request for a preliminary injunction. Defendants then filed a motion to dismiss, after which plaintiffs filed a First Amended Complaint ("FAC") on August 3, 2010 alleging seven claims for relief. Defendants have filed a supplemental memorandum of points and authorities in support of their motion to dismiss, which the Riveras have opposed. For the reasons stated below, the motion to dismiss is granted without leave to amend.

## II. BACKGROUND

In the FAC, the Riveras allege that, on August 18, 2006, they purchased the Property after negotiating a mortgage and home equity line of credit ("HELOC") with defendant Countrywide Bank, N.A. ("Countrywide Bank"), whose successor in interest is defendant Bank of America, N.A. ("BofA"). According to the FAC, the mortgage and HELOC (together, the "Home Loans"), which were memorialized by promissory notes and secured by deeds of trust, were brokered by defendant Countrywide Home Loans, Inc. ("CHL") and were subsequently assigned by Countrywide Bank to BofA. Plaintiffs allege that the mortgage was eventually assigned from BofA to defendant Vantium Capital, Inc., dba Acqura Loan Services, while the HELOC and related promissory note and deeds of trust were assigned to defendant E*Trade. ReconTrust was the initial trustee on the deeds of trust. The promissory notes executed pursuant to the Home Loans, as well as the deeds of trust, were serviced by defendants Vantium Capital, Inc. and BAC.[1]

---

[1] According to defendants, plaintiffs' lender was CHL, and BofA (as successor in interest to Countrywide Bank) is neither a parent nor subsidiary of CHL and therefore had no involvement in the origination of plaintiffs' loans. Additionally, the FAC, in a confusing manner, refers in some instances to each of the defendants individually while at other instances to the "Defendants" collectively. These distinctions between the defendants, however, do not affect the Court's findings.
No. C 10-00805 RS

The FAC avers that defendants failed to make a number of disclosures required by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq*, prior to executing the Home Loans, including disclosing the difference between plaintiffs' applicable interest rate and the promoted rate, a good faith estimate of the closing costs, an itemization of the amount financed, a notice of the plaintiffs' right to cancel and right to rescind, the method used to determine the finance charges and loan balance, and the likelihood of negative amortization given the repayment structure.  The FAC also avers that defendant Stephanie Saunders, on behalf of CHL, completed the loan application and that "Defendants inserted an inflated income" in order to qualify the Riveras for loans that they could not otherwise afford.[2]  As a result of these alleged misrepresentations and omissions, plaintiffs contend that they were induced to accept unaffordable loans and eventually fell behind on their payments.

Once the Riveras became delinquent on their loans, ReconTrust recorded a notice of default on May 2, 2008 and eventually recorded a notice of sale on August 3, 2008.[3]  RJN Ex. D.  The Riveras subsequently sent to CHL, ReconTrust, Countrywide Bank and Mortgage Electronic Registration System, Inc. a "Notice of Right to Cancel and Opportunity to Cure" on July 29, 2009 and a "Notice of Removal" of defendants as trustee as well as a "Notice of Revocation of Power of Attorney" on July 24, 2009.[4]  Based on these allegations, plaintiffs assert claims for relief for violations of (1) TILA (against defendants CHL and Countrywide Bank), (2) RESPA, (3) fraud, (4) California Business and Professions Code section 17200 *et. seq.*, (5) negligence, (6) accounting and (7) quiet title.  The parties appeared for oral argument on the motion to dismiss on September 2, 2010.

---

[2] Saunders was added as a defendant in the FAC, as were the allegations as to her involvement in the loan process.  The FAC makes no averments, however, as to Saunders' position within CHL.

[3] Defendants ask the Court to take judicial notice of a number of documents attached to the motion to dismiss.  Judicial notice is limited to facts not subject to reasonable dispute and either generally known in the community or capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned.  Fed. R. Evid. 201; *see Lee v. City of Los Angeles*, 250 F.3d 668, 688-690 (9th Cir. 2001).  Here, because neither party disputes the validity of the notice of default, the Court takes judicial notice of the fact that ReconTrust recorded a notice of default on May 2, 2008.

[4] Although the FAC alleges that plaintiffs sent the "Notice of Right to Cancel and Opportunity to Cure" on July 29, 2009, the letter attached as Exhibit A to the FAC appears to be dated July 10, 2009.

NO. C 10-00805 RS

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Claims grounded in fraud are also subject to FRCP Rule 9(b), which provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy that rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

A motion to dismiss a complaint under FRCP Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under FRCP Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 US at 570). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 US at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true)). While in dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment, *Lucas v. Dep't of Corrections,* 66 F.3d 245, 248 (9th Cir. 1995), when amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir.1996).

//

No. C 10-00805 RS

4

IV. DISCUSSION

A. TILA

Plaintiffs allege that defendants failed to make required disclosures under TILA, as amended by the Home Ownership Equity Protection Act and as implemented by Regulation Z.  15 U.S.C. § 1601, *et seq.*; 12 C.F.R. § 226.  In particular, they contend that defendants failed to inform them of their right to rescind under Section 1635, which provides that a borrower is entitled to rescind a consumer credit transaction within three days after execution.  15 U.S.C. § 1635(a).  If a creditor fails to disclose that right, a borrower then has three years from the date of consummation in which to rescind.  15 U.S.C § 1635(f); 12 C.F.R. § 226.23(a)(3).  The "date of consummation" of a transaction is the date on which the "consumer becomes contractually obligated on a credit transaction," which occurs when the loan is executed.  12 C.F.R. § 226.2(a)(13); *see also King v. State of Cal.*, 784 F.2d 910 (9th Cir. 1986).  As the Ninth Circuit has held, "[Section] 1635 is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period."  *Miguel v. Country Funding Corp.,* 309 F.3d 1161, 1165 (9th Cir. 2002)  Plaintiffs point out in their opposition to the motion to dismiss that, once a borrower exercises the right to rescind, if a creditor refuses to cancel the loan the borrower has one year from the date of that refusal in which to file a suit for damages.  *See Ramos v. Citimortgage, Inc.*, 2009 WL 86744 at *3 (E.D. Cal. Jan. 8, 2009) (citing *Miguel* 309 F.3d at 1165 (citing 15 U.S.C. § 1640(e))).  What plaintiffs omit from their brief, however, is that *Ramos* went on to find that "if the borrower files his or her suit over three years *from the date of a loan's consummation*, a court is powerless to grant rescission." *Id*. (citing *Miguel* 309 F.3d at 1165) (emphasis added).

Here, plaintiffs executed the Home Loans on August 18, 2006, but did not filed their complaint in this Court until June 2010, nearly four years later.  While the Riveras may have sent their "Notice of Right to Cancel and Opportunity to Cure" within three years of executing the loans (and less than a year before bringing their lawsuit), they still nonetheless failed to bring their TILA

claims in a timely fashion under the statute. Therefore, their TILA claims must be dismissed without leave to amend.[5]

Moreover, the right to rescind does not apply to residential mortgage transactions. 15 U.S.C. § 1635(e); 12 C.F.R. § 226.23(f). A "residential mortgage transaction" consists of "a transaction in which a mortgage, deed of trust… or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition… of such dwelling." 15 U.S.C. § 1602(w); 12 C.F.R. § 226.2(a)(24). In their memorandum in support of the motion for a temporary restraining order, plaintiffs relied upon *Semar v. Platte Valley Fed. Sav. & Loan Assoc.* for the proposition that borrowers have three days to rescind consumer credit transactions where the borrower's principal dwelling is the security interest. 791 F.2d 699, 701 (9th Cir. 1986). As the Court previously held, however, that case is distinguishable from the facts here because it involved homeowners who took out a long-term loan to pay off a one-year second trust deed loan on their house. *Id*. Plaintiffs failed to address this issue in their opposition to the motion to dismiss. In short, because the FAC alleges that the Riveras executed the mortgage and HELOC at the same time precisely in order to purchase the Property (FAC at ¶¶ 12, 16), those loans are residential mortgage transactions exempt from the right to rescind, and plaintiffs' TILA claims must therefore be denied without leave to amend.

B. RESPA

Plaintiffs' second claim for relief alleges a violation of Sections 2605(e) and 2608 of Title 12 of the United States Code. RESPA claims under Sections 2608 and 2605 are subject to a one-year

---

[5] As the Court stated in its order denying the preliminary injunction, while TILA recognizes the principal of equitable tolling under certain circumstances, that principal will not save the Riveras' TILA claim because the Ninth Circuit has held that "Congress placed a three year absolute limit on rescission actions, demonstrating its willingness to put a limit on the scope of some types of TILA actions." *King*, 784 F.2d at 914. "At least in the rescission context," the Circuit reasoned, "Congress did not intend to prolong the limitations period." *Id*. Additionally, whether or not a statute of limitations should be equitably tolled is a factual determination that "focuses on whether there was excusable delay by the plaintiff and may be applied if, *despite all due diligence,* a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Huseman v. Icicle Seafoods, Inc.,* 471 F.3d 1116, 1120 (9th Cir.2006) (quotations and citations omitted) (emphasis in original). Even if plaintiffs were legally entitled to equitable tolling of their claims, which they are not, they have failed to allege any facts in the FAC that would warrant tolling the statute of limitations here.

No. C 10-00805 RS

6

statute of limitations and a three-year statute of repose, respectively. 12 U.S.C. § 2614. Because more than three years passed between the execution of the loans and the filing date, and because plaintiffs have not alleged any facts in the FAC that would warrant tolling the statute of limitations, plaintiffs' claims for damages under RESPA are time-barred and therefore must be denied without leave to amend. *See Huseman*, 471 F.3d at 1120.

Additionally, the FAC fails to allege that defendants' response to plaintiffs' qualified written requests ("QWRs") constituted a violation of RESPA. Under RESPA, "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." 12 U.S.C. § 2605(e)(1)(A). A QWR is a "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that: (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Here, the Riveras allege that the July 29, 2009 Notice of Right to Cancel and Opportunity to Cure and the July 24, 2009 Notice of Removal, which are both attached to the FAC, constituted QWRs to which defendants failed to respond properly. FAC. at ¶ 63.[6] As an initial matter, however, while the letters were sent to CHL, ReconTrust, Countrywide Bank and Mortgage Electronic Registration System, Inc., the FAC alleges that the promissory notes and deeds of trust associated with the Home Loans were at all times serviced by Vantium Capital, Inc. and BAC. FAC at ¶ 35. In other words, neither letter was a QWR *to a servicer*, as required under RESPA. Moreover, despite plaintiffs' argument to the contrary, neither letter related to the servicing of the loan accounts. While the letters do state plaintiffs' belief that the Home Loans and applicable deeds of trust were obtained fraudulently, nowhere in the letters do the plaintiffs address any errors in the

---

[6] In their response to the motion to dismiss, plaintiffs focus only on the Notice of Right to Cancel and Opportunity to Cure.

No. C 10-00805 RS

7

account or request any additional information from defendants. Therefore, the letters attached to the FAC are not QWRs under RESPA and plaintiffs' claims pursuant to Section 2605 must be dismissed without leave to amend.

C. Fraud

The Riveras' third claim for relief for fraud alleges that "Stephanie Saunders, acting on behalf of defendant CHL, completed the loan application for Plaintiffs, and Defendants inserted an inflated income for Plaintiffs, without disclosing said change to him (sic)." FAC at ¶ 69. To satisfy the heightened pleading requirement under FRCP Rule 9(b), the FAC must allege the "who, what, where, when, and how" of the alleged fraud. *See Cooper*, 137 F.3d at 627. Here, although the FAC alleges that Saunders completed plaintiffs' loan application and that "Defendants inserted an inflated income," it fails to satisfy this heightened pleading requirement because it makes no averments as to who inserted the inflated income or how it was falsified.

Moreover, under California Code of Civil Procedure section 338(d), "[a]n action for relief on the ground of fraud or mistake" must be brought within three years after the party discovers the fraud. Cal. Civ. Proc. Code § 338. A party alleging fraud has a duty to exercise diligence in discovering the fraud, such that the three year limitation begins to run when that party "has the opportunity to obtain knowledge from sources open to his investigation." *Lee v. Escrow Consultants, Inc*., 210 Cal. App. 3d 915, 921 (1989). Here, the Riveras signed the loan documents on August 18, 2006, but did not file suit until June 2, 2010, almost four years later. While the FAC states that "Plaintiffs did not discover the material misrepresentations until the adjustable interest rate increased," (FAC ¶ 75) it fails to allege when this discovery took place. Indeed, nothing in the FAC supports plaintiffs' contention that "[a]ssuming arguendo that the rate did not adjust within one year of consummating the loans, Plaintiffs brought the action within three years of the rate adjustment." Opp. at 4. Moreover, the FAC makes no averments that plaintiffs lacked access to the Home Loan documents, nor that they were precluded from otherwise discovering the alleged fraud, during those four years. In short, plaintiffs' fraud claim fails to satisfy the heightened pleading requirements of FRCP Rule 9(b) and therefore must be dismissed. As plaintiffs have already had

1 the opportunity to amend but have indicated no ability to satisfy the heightened pleading standard

2 required under Rule 9(b), further amendment would be futile and dismissal is with prejudice.

3 D. <u>Unfair Competition Law</u>

4 The Riveras aver in their fourth claim for relief that defendants engaged in unfair or

5 unlawful business practices in violation of California's Unfair Competition Law ("UCL").

6 Cal. Bus. & Prof. Code § 17200.  They argue broadly that defendants' acts constitute unfair

7 or unlawful business practices "as defined in" the Code but do not actually differentiate

8 between the defendants or pin their allegations to a particular prong of the UCL's prohibition

9 against "unfair, unlawful or fraudulent" business practices.

10 Under the "unlawful" prong, the UCL incorporates other laws and treats violations of

11 those laws as unlawful business practices independently actionable under state law.

12 *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of

13 almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v.*

14 *Superior Ct.*, 27 Cal. App. 4th 832, 838-39 (1994).  Where a plaintiff cannot state a claim

15 under the "borrowed" law, however, he or she cannot state a UCL claim either. *See, e.g.*,

16 *Ingels v. Westwood One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Cal. Ct.

17 App. 2005) ("[a] defendant cannot be liable under [section] 17200 for committing unlawful

18 business practices without having violated another law") (citation omitted).

19 Under a "fraud" theory, a plaintiff must show that "members of the public are likely

20 to be 'deceived'" by the defendant's practices. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312

21 (2009) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)).  Where a plaintiff alleges that

22 the defendant failed to disclose material facts, he or she must first establish that the

23 defendant had a duty to disclose those facts. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152

24 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not

25 support a claim under the fraudulent prong of the UCL.").

26 As to UCL's "unfair" prong, California courts traditionally have applied a balancing

27 test.  Under this test, "the determination of whether a particular business practice is unfair

28

No. C 10-00805 RS

9

necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *see also People v. Casa Blanca Convalescent Homes Inc.*, 159 Cal. App. 3d 509, 530 (1984) (stating that a practice in California is unfair "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."). In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, however, the California Supreme Court rejected that test and instead held that in a claim brought by a competitor, "any finding of unfairness… [must] be tethered to some legislatively declared policy." 20 Cal. 4th 163, 185 (1999). The Ninth Circuit has observed that these two options—to apply *Cel-Tech* directly to consumer cases and require that the unfairness be tied to a "legislatively declared" policy or to adhere to the former balancing test as stated in cases such as *Motors, Inc.*—are not mutually exclusive. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

Here, plaintiffs fail to establish a claim for relief under any of the UCL prongs. Indeed, while the Court raised these issues in the order denying a preliminary injunction, the FAC left the UCL claim unchanged. Moreover, plaintiffs fail to address this claim in their opposition to the motion to dismiss. In short, because plaintiffs have added no factual support to their conclusory claim of damages as a result of "Defendants' wrongful conduct," the UCL claim must be dismissed. As an opportunity for further amendment would be futile on this record, dismissal is without leave to amend.

E. Negligence

The Riveras' fifth claim for relief for negligence is based on the proposition that "Defendants' duty was to perform the acts of brokers to loans in such a manner as to not cause Plaintiffs harm." FAC at ¶ 82. It is settled California law, however, that "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings and Loan Ass'n*, 231 Cal. App. 3d 1089, 1093, fn. 1 (1991); *see also*, *Oaks Management Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006) ("a loan transaction is at arms-length

No. C 10-00805 RS

and there is no fiduciary relationship between the borrower and lender"). Moreover, California courts have routinely found that, under a standard borrower/lender relationship, a lender has no duty to disclose to a borrower what the borrower may or may not be able to afford. *See Wagner v. Benson*, 101 Cal. App. 3d 27, 34-35 (1980).

Here, although the FAC states in conclusory fashion that CHL was a loan broker and that defendants owed a duty to perform the acts of loan brokers, plaintiffs have made no averments, nor provided any facts, to suggest that the relationship between the defendants and the Riveras is anything more than a routine relationship between a lender and borrower. The only agreements alleged in the FAC are the Home Loans themselves; there are no averments that these agreements created anything more than an obligation by CHL to fund a loan and an obligation by the Riveras to repay that loan. Again, while the Court raised these issues in the order denying a preliminary injunction, plaintiffs left the negligence claim unchanged in their FAC and failed to address it in their opposition to the motion to dismiss. Therefore, by failing to establish a duty owed by defendants, plaintiffs' negligence claim must be dismissed without leave to amend.

F. Accounting

The sixth claim for relief seeks an accounting from defendants. Notwithstanding the fact that accounting is more appropriately characterized as a form of relief rather than as an independent claim, *Borrego v. BMG U.S. Latin*, 92 Fed. App'x 572, 573 (9th Cir. 2004) (citing *Hillman v. Stults,* 263 Cal. App. 2d 848, 876 (1968)), plaintiffs fail to allege an entitlement to, or the need for, such an accounting.

To assert a right to accounting, plaintiffs must demonstrate either "(1)… the relationship of the parties created an equitable duty to account…; (2)… the complicated nature of accounts would make it difficult, if not impossible, for a jury to unravel the numerous transactions; [or] (3)… an accounting on an otherwise legal claim [is] incidental to a demand for an injunction or other equitable relief." *Towers v. Titus*, 5 B.R. 786, 793 (N.D.Cal.1979) (citing 9 Wright & Miller § 2310). Moreover, they must establish that "some balance is due the plaintiff[s] that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). Here,

No. C 10-00805 RS

11

nothing in the FAC suggests that defendants owe the Riveras any amount of money (indeed, it appears just the opposite) or that the nature of the transaction or the relationship of the parties necessitates an accounting. Again, while the Court raised these issues in the order denying a preliminary injunction, plaintiffs left the accounting claim unchanged in their FAC and failed to address it in their opposition to the motion to dismiss. Therefore, plaintiffs' claim for an accounting must be dismissed without leave to amend.

G. Quite Title

The FAC's last claim for relief is for "quiet title" to the Property. Defendants make a number of arguments against "quiet title," but it is dispositive as to this claim that, under California law, a borrower may not assert "quiet title" against a mortgagee without first paying the outstanding debt on the property. *See Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted). Therefore, because the Riveras have not paid their outstanding debt on the Property, their claim for "quiet title" must be dismissed without leave to amend.

## V. CONCLUSION

For the reasons stated above the motion to dismiss is granted without leave to amend.

IT IS SO ORDERED.

Dated: 11/22/10

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 10-00805 RS

12